IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANGELA R. FORD                                                      PLAINTIFF

vs.                                   Civil No. 05-6004

JO ANNE B. BARNHART,
Commissioner, Social Security Administration                 DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

Angela R. Ford (hereinafter "Plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim for disability insurance benefits, (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423,* and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI, *42 U.S.C. § 1381a*. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The Commissioner filed an appeal brief on April 25, 2005 (Doc. #4). Despite ample time to do so[1], Plaintiff has failed to file an appeal brief in this matter. The history of the administrative proceedings is contained in the Commissioner's appeal brief (Doc. #4, pp. 1-2). and will not be recounted herein, except as is necessary.

Plaintiff alleges that she is disabled due to: Systemic Lupus Erythematosus (hereinafter, "SLE"); fatigue; swelling; joint pain; anemia; weakness and loss of strength;

---

[1] Plaintiff filed her appeal on January 4, 2005 (Doc. #1). The answer of the Commissioner and the transcript of the administrative proceedings was filed of record and provided to Plaintiff on February 28, 2005 (Doc. #2).

pain; inability to concentrate; inability to sleep; memory loss; blurred vision; renal vascular hypertension; side effects of chemotherapy; hypertension; migraine headaches; seizure disorder; loss of range of motion; polyserositis; mucositis; arthritis; loss of hair and other side effects of chemotherapy; dysuria; hematuria; angioedema; chills and fever; synovitis; SLE vasculitis/renal vascular hypertensive encephalopathy with diffuse areas of abnormal increased signal intensity in the cortical and subcortical regions, perventricular regions, both cerebellar hemispheres and the corpus callosum of her brain; and, shortness of breath. The issue before this Court is whether the decision of the Commissioner is supported by substantial record evidence.

The Plaintiff's administrative hearing was conducted on December 10, 2003 (T. 386-408). The Administrative Law Judge (hereinafter "ALJ") issued his final written decision denying Plaintiff's applications for benefits on July 22, 2004 (T. 15-22). Plaintiff then sought review by the Appeals Council (T. 10). The Appeals Council denied Plaintiff's request for review on November 8, 2004 (T. 7-9), thus making the decision of the ALJ the final decision of the Commissioner.

From this adverse decision, the Plaintiff appeals (Doc. #1). This matter is before the undersigned by consent of the parties (Doc. #2).

**Relevant Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000); see also Craig v. Apfel 212 F.3d 433, 435-436 (8th Cir. 2000)*. Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to

support the Commissioner's conclusion. *See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999)*. In considering whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch, 201 F.3d at 1012*. We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.; Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)*. Even if this Court might have weighed the evidence differently, the decision of the ALJ may not be reversed if there is enough evidence in the record to support the decision. *Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual

3

functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

**Discussion:**

The ALJ found that the medical evidence established that Plaintiff suffered from the following severe impairments: "lupus, polyserositis, muscositis, arthritis, hair loss, headaches, blurred vision dysuria, hematuria, angioedema, chills and fever; (sic) synovitis of the hands, wrists, elbows, knees, ankles, and feet; (sic) and [,] seizures" (T. 17).

Throughout his decision, the ALJ singularly considered some of Plaintiff's alleged impairments, with single sentences or paragraphs being devoted to the analysis of each impairment (T. 15-22). In doing so, the ALJ singularly discussed Plaintiff's treatment for the alleged impairment at issue. However, he failed to consider or discuss the combined effect of Plaintiff's severe impairments. The ALJ also failed to consider the side effects of Plaintiff's chemotherapy treatments. In fact, the ALJ's analysis of Plaintiff's alleged impairments, follows in its entirety:

> The medical evidence indicates that the claimant has lupus, polyserositis, mucositis, arthritis, hair loss, headaches, blurred vision, dysuria, hematuria, angioedema, chills and fever; (sic) synovitis of the hands, wrists, elbows, knees, ankles, and feet; and[,] seizures, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Specifically, the Administrtive Law Judge has considered the criteria of listed impairments 2.04 (Visual

4

Acuity), 11.03 (Epilepsy), and 14.02 (Systemic Lupus Erythematosus), and 14.09 (Inflammatory Arthritis), but finds that the objective medical records do not substantiate findings consistent with listing level criteria.

Claimant presented to the Hot Springs County Medical Center in Malvern, Arkansas, on November 252, 2000, for complaints of sharp and stopping (sic) right lower chest pain. She refused admission stating she needed to breast feed her baby, and wanted IM Rocephin for two days, and Biaxin XL. Her current medications were Prednisone, and Ibuprophen. X-rays indicated large right pleural effusion with compression atelectasis of the adjacent lung. There was little change comparee to x-rays of November 25, 2000. The left lung was clear. She received an injection ov Rocephin on November 26, 2000 (Exhbit 7-F(1-3)).

Claimant underwent an MRI of the brain with and without Gadolinium on May 12, 2001. The impression was abnormal diffuse areas of increase T2-weighted signal density of cortical and subcortical regions, periventricular regions, corpus callosum, and both cerebellar hemispheres. Findings reflected Systemic Lupus Erythematosus (SLE) vasculitis or renal vascular hypertensive encephalopathy (Exhibit 10-F).

A medical record dated August 10, 2001, indicated claimant was a slender female weighing 134 pounds, with blood pressure 124/80, SLE, hypertension and seizure disorder. She had no skin rash, synovitis, or edema of lower extremities. Her hair was growing back and she was "doing well." Her current medications were Prevacid changing to Prilosec due to cost, Plaquenil, Lasix, Prednisone, Dilantin changed to Tegretol, Toprol, PhosLo, and Cytoxan. She had also taken Epogen for enemia of low erythopoietin level. The impression was her SLE was doing well (Exhibit 14-F(3)). Lab results indicated hemoglobin was 11 - improved from a low of 7; stable creatinine at 1.8 - improved from 4.4; and the Lupus and renal failure were improving. She was to receive a gram of Cytoxan on August 21, 2001, and continue her Epogen monthly (Exhibit 16-F(7)). (Exhibits 14-F(3)) and 16-F(7)).

On December 17, 2003, claimant was well developed an dwell nourished in no acute distress. The heart had regular rhythm, no murmurs; all joints had full range of motion; no active synovitis/synovial proliferation; and there was "good grip and curl of the hands." Current medications were Prednisone, and Plaquenil. She was currently attending cosmetology school 5 days per week, 8:00 A.M. to 4:30 P.M. She was divorced and raising to (sic) young children ages 3 and 13 (Exhibit 18-F(1)).

5

(T. 17-18).

The above quotation sets forth the entirety of the ALJ's analysis of Plaintiff's impairments and treatment thereof.

As evidenced above, the ALJ discussed the singular treatment for some of Plaintiff's severe impairments, but never considered the combined effect to the impairments he found to be severe in conjunction with one another, or with the allegations of pain (T. 392, 393, 394), fatigue (T. 392, 393, 394, 231, 318, 319,65-69, 229-233), weakness/loss of strength (T. 393), inability to sleep (T. 394, 333), inability to concentrate (T. 401, 229), memory loss (T. 399, 401, 229), swelling (T. 393, 405, 303, 304, 332), shortness of breath (T. 399, 269), anemia (T. 318), rash (T. 393) or decreased range of motion (T. 393).

20 C.F.R. § 423 (d)(2)(B) provides:

In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

The ALJ is required to consider all impairments he finds to be severe. Likewise, he is required to consider the combined effect of all impairments he finds to be severe. *See 42 U.S.C. § 1382c(a)(3)(F); See also 20 C.F.R. § 404.1523.* In this instance, the ALJ found the Plaintiff's history, diagnoses and/or treatment for lupus[2], polyserositis[3], mucositis[4], arthritis,

---

[2]Systemic lupus erythematosus is an inflammatory connective tissue disorder of unknown etiology, which predominately occurs in young women. SLE involves symptoms such as fever, malaise, manifestation in any organ, intermittent arthritis to acute polyarthralgias, tendon contractures, joint deformity without evidence on x-ray of erosion,

6

hair loss, headaches, blurred vision, dysuria[5], hematuria[6], angioedema[7], chills and fever, synotitis[8] of the hands, wrists, elbows, knees ankles, and feet, and seizures, to be severe impairments. Nonetheless, despite his solitary statement that these impairments represent severe impairments, he failed to otherwise consider the issue of whether the combination of these severe impairments, together with the alleged pain, fatigue, swelling, decreased range of motion weakness/loss of strength, inability to sleep or concentrate, loss of memory, shortness of breath or other medication side effects[9] result in a finding of disability. The apparent failure to consider these subjective allegations in relation to what he deemed to be

---

butterfly pattern cutaneous lesions, recurrent pleurisy, pulmonary function abnormalities, pericarditis, pulmonary hypertension, headaches, lesions of the spleen, epilepsy, personality changes, psychoses, organic brain syndrome, and renal failure or disease. See *The Merck Manual,* pp.1317-1319 (16th Edition 1992).

[3]Polyserositis involves the general inflammation of serous membranes with serous effusion. *Dorland's Illustrated Medical Dictionary*, p. 1335 (27th Edition 1988).

[4]Mucositis is the inflammation of mucous membranes. *Dorland's Illustrated Medical Dictionary*, p. 1059 (27th Edition 1988).

[5]Dysuria is the medical term used to describe painful or difficult urination. *Dorland's Illustrated Medical Dictionary*, p. 522 (27th Edition 1988).

[6]Hematuria is the term used to describe blood in the urine. *Dorland's Illustrated Medical Dictionary*, p. 743 (27th Edition 1988).

[7]Angioedema is the vascular reaction involving the deep dermis or subcutaneous or submucosal tissues, representing localized edema caused by dilatation and increased permeability of the capillaries and characterized by development of giant wheals. *Dorland's Illustrated Medical Dictionary*, pp. 82-83 (27th Edition 1988).

[8]Synovitis involves the inflammation of the synovial membrane. It is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac. *Dorland's Illustrated Medical Dictionary*, p. 1649 (27th Edition 1988).

[9]Namely, the side effects of the chemotherapy drugs were not discussed within the ALJ's decision, nor were Plaintiff's extended hospitalizations during renal failure and chemotherapy treatments (T. 278, 396, 397, 406, 404, 405, 406, 407).

AO72A
(Rev. 8/82)

severe impairments necessarily leads to the conclusion that the ALJ failed in his duty to consider the combined effect of all of Plaintiff's impairments, in making a disability determination with respect to her application for benefits.

The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan, 922 F.2d 480, 484 (8th Cir. 1991), citing Johnson v. Secretary of Health & Human Servs., 872 F.2d 810, 812 (8th Cir. 1989)*. In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs., 733 F.2d 571, 573 (8th Cir. 1984) and Wroblewski v. Califano, 609 F.2d 908, 914 (8th Cir. 1979)*. As has been noted, the Plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir. 2000)*.

A thorough review of the record indicates that the ALJ failed to properly analyze Plaintiff's subjective allegations. In determining whether the ALJ properly disregarded Plaintiff's subjective complaints, such as pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted)*,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating

AO72A
(Rev. 8/82)

to such matters as:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).*

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992).* The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993).*

Further, in evaluating these factors, the ALJ must "discuss" these factors in the hearing decision. *Herbert v. Heckler, 783 F.2d 128, 131 (8th Cir.1986)(citing Polaski v. Heckler, 751 F.2d 943, 9580-950 (8th Cir.1984)).*

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." *Polaski v. Heckler, 739 F.2d at 1322.*

To determine whether the ALJ properly applied the factors listed in *Polaski*, we must determine whether the ALJ took into account all the relevant evidence, and whether that evidence contradicted the claimant's own testimony so that the ALJ could discount the

9

AO72A
(Rev. 8/82)

testimony for lack of credibility. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir.1987). The ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

In this case, with respect to subjective allegations and nonexertional limitations, the ALJ found plaintiff's allegations not supported by credible facts (T. 23). Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, *783 F.2d at 130* (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

Here, the ALJ fails to meaningfully examine the *Polaski* factor of dosage and side effects of medication, particularly the chemotherapy drugs at issue. *See Polaski v. Heckler*, *739 F.2d at 1321-22.* The ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler*, *783 F.2d at 131* (even though evidence with respect to *Polaski* factors is in the record, those factors must be discussed in the decision).

Likewise, the ALJ's analysis must address the relevant time period of Plaintiff's pending application. Here, the relevant time period for Plaintiff's application for DIB began

10

on the alleged onset date of September 20, 1999[10], and ends with the date of the ALJ's decision, July 22, 2004 (T. 388, 208, 212, 15-22). For purposes of Plaintiff's application for SSI benefits, the relevant time period begins with the date the application was filed, May 2, 2002, and ends with the date of the ALJ's decision, July 22, 2004 (T. 379, 15-22). Yet, the ALJ failed to discuss any of the numerous medical records which exist prior to November 25, 2000, or after December 17, 2003 (T. 17-18). Rather than discussing the medical evidence for the entire relevant time period(s), the ALJ began his discussion with records beginning well after the DIB relevant time period began, and ceasing his discussion with records of December 2003 (T. 18), which was seven months prior to the end of both the DIB and SSI relevant time periods. The ALJ must consider the record as a whole when discrediting subjective complaints. *Ownbey v. Shalala, 5 F.3d at 344*. Upon remand, the ALJ should discuss and consider all evidence from the relevant time period. The undersigned acknowledges that the ALJ's decision may be the same after proper analysis. Nonetheless, proper analysis must occur. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir. 1991)*.

**Conclusion:**

Accordingly, we conclude that the decision of the Commissioner denying benefits to the Plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for further proceedings consistent with this decision.

---

[10] The original application for DIB benefits alleged an onset date of January 2, 2001 (T. 208). However, at hearing the onset date was amended to September 20, 1999, both orally and in writing (T. 388, 212)

ENTERED this 25th day of January, 2006.

    /s/Bobby E. Shepherd
    Honorable Bobby E. Shepherd
    United States Magistrate Judge

**AO72A**
**(Rev. 8/82)**